## SHELL PETROLEUM CORP. et al. v. WOOD.

No. 21880.   May 15, 1934.

H. C. Thurman, Thompson, Mitchell, Thompson & Young, John M. Thompson, and Lee B. Thompson, for plaintiffs in error.

Simons, McKnight, Simons, Mitchell & McKnight, for defendant in error.

PER CURIAM. This action was commenced by Mrs. Muriel Wood, as plaintiff in the lower court, to recover damages from the defendants, C. V. Kennedy and the Shell Petroleum Corporation, for personal injuries which the plaintiff sustained in an automobile accident while she was riding as an invited guest with Mrs. Katherine Winters in the latter's car. The accident occurred when Kennedy, while working for the Shell Petroleum Corporation, attempted to pass the Winters car. The jury returned a verdict for the plaintiff for $25,000, and no complaint is made by the defendants that the verdict is excessive. Judgment was rendered on the verdict, and the defendants

appeal. The parties will be referred to as in the lower court.

The acts of negligence charged by the plaintiff in her petition are as follows:

"That the said defendant C. V. Kennedy, driving such Ford coupe, driving south on the aforesaid road, approached the car in which plaintiff and the said Katherine Winters were driving, and at which time he was driving at a rapid speed of approximately 40 miles per hour, and while so driving and without giving any warning or notice of any kind or character of his approach to the said Katherine Winters or this plaintiff, he attempted to pass the car in which they were driving and drove his car around and in front of the car occupied by the said Katherine Winters and the plaintiff; that in so doing the said C. V. Kennedy drove said car being propelled by him in a reckless, careless and negligent manner, and, in attempting to pass the car occupied by plaintiff, pulled his car around in front of the car occupied by the plaintiff and so close thereto that, in attempting to pass such car, the rear bumper on his car caught the left front wheel of the car being driven by the said Katherine Winters, and in which plaintiff was riding, with great force and as the result of which the car occupied by the plaintiff was suddenly and violently overturned and thrown around until it faced the opposite direction and this plaintiff was caught by or under some part of such car and violently thrown over and under some part of such car and struck by such car in overturning, with the result that she suffered the injuries hereinafter set forth."

The plaintiff testified that the accident happened on a good dirt road that had recently been graded, and that there was some loose dirt in the center of the road that had been left by the grader; that the road on each side was smooth; that Mrs. Winters was driving on the west side of the center, going south. Her testimony as to how the accident happened is as follows:

"Q. Now, you say the first you knew was when this car came along side of you? A. Yes, sir. Q. Can you tell about how close it was to your car? A. Well, you could just have reached it. He was crowding us. Q. Now, what did Mrs. Winters do, if anything, at that time? A. Well, she turned just a little to the right and just as she started to straighten her car up, well, he was going real fast and he just caught his bumper right into her wheel. Q. Which wheel? A. Into the left wheel, front wheel. Q. What was he doing at the time his bumper caught into your left front wheel? A. Well, he was just speeding, going right past us and just cut right in, and as he cut in it caught our wheel. Q. You mean he cut in ahead of you? A. Yes, sir. Q. And his rear bumper caught your front wheel? A. Yes, sir. Q. What happened to your car when that happened? A. Well, he must have drug us a short ways and then he throwed his brakes on real quick and when he throwed his brakes on, that just spun our car right around and over. * * * Q. Are you able to state about how fast Mrs. Winters was driving at the time he went to pass you? A. About 20 miles an hour. Q. And are you able to state about how fast he was going as he went around you? A. Well, he was going about 35 or 40 miles an hour. * * * Q. Did he sound any horn or make any alarm before he went to go around you? A. No, sir, he gave no signal at all."

Mrs. Winters testified as to how the accident happened, as follows:

"Q. Now, when was the first that you knew that the driver of that car was attempting to pass the car you were driving? A. When he was at the side of my car. Q. Did he sound his horn or make any noise before he attempted to go around you? A. No, sir. Q. Now, where was he when you first noticed him, after you had sighted him in the mirror? A. He was out by the side of my car. Q. What was he doing? A. He was going around me. Q. How close was his car to yours? A. I could have touched his car. * * * Q. Now, up to that time, were you having any trouble with your driving? A. No, sir. Q. How were you driving along there? A. Well, we was just driving along talking. Q. And up to the time he went to pass you, had you lost control of your car in any way? A. No, sir. * * * Q. What did you do? A. I knew he was crowding me then, and I pulled over to the right to keep him from hitting me, and I didn't want to go into the ditch when I pulled over to the right and I straightened my car up, and as I straightened up he struck my car with his rear bumper, struck my left front wheel, and he was cutting in ahead of me."

The defendants in their answer denied generally the allegations of the petition, and further alleged that the accident was unavoidable on the part of the defendant Kennedy. They admitted that Kennedy was at the time in the employ of the Shell Petroleum Corporation and driving its car.

Kennedy testified that the loose dirt in the center of the road was five or six feet in width at the place where the accident occurred; that he sounded his horn some distance back of where he passed the Winters car; that the Winters car was to the right of the center of the road, and that he crossed the loose dirt in the center and

was in the traveled portion of the road to the left or east of the center as he started to pass the Winters car; that when he sounded his horn the plaintiff looked back at him through the rear window of the Winters car; that as he got about even with her car, Mrs. Winters peeped around at him to see who was passing, and gradually turned her car to the right and as she straightened her car to the left, she got in the soft dirt and clods in the center, and then turned it back to the right again, and then whipped back to the left; that she crossed the center of the road and hit his car in the left or east lane of traffic; that up to that time he had not driven over into the right or west lane of traffic; that he intended to drive over into the west lane of traffic about 25 yards down the road; that as he passed the Winters car she was going about 20 miles per hour and he was going about 30 or 35.

1. In the statement of the case the lower court quoted the pleadings almost in their entirety, and the defendants assign this as error. The only conflict in the evidence which is presented by this appeal is as to how the accident happened. From the foregoing statement it will be seen that the plaintiff had a definite theory, both in her petition and evidence, as to the acts of negligence which she claims caused the accident. Her allegations of negligence were not complicated or prolix. The court did not send the pleadings to the jury for them to determine what the issues were. In other instructions the court clearly defined the issues. The defendants did not save an exception to the statement of the case. They did submit a requested instruction stating the issues, but it was not correct, in that it omitted three of the four acts of negligence charged in plaintiff's petition.

Under these circumstances this assignment of error is without merit. Schmucker v. Clifton, 62 Okla. 249, 162 P. 1094; Cushing Refining & Gasoline Co. v. Deshan, 149 Okla. 225, 300 P. 312; Newton v. Allen, 67 Okla. 73, 168 P. 1009; Seay v. Plunkett, 44 Okla. 794, 145 P. 496; Chicago, R. I. & P. Ry. v. Brooks, 155 Okla. 53, 11 P. (2d) 142.

2. The defendants next assign as error the refusal of the court to give five requested instructions. No. A was to the effect that if the Winters car crossed over to the east of the center of the highway before being struck, the verdict should be in favor of the defendants. Nos. B and D

were substantially the same as No. A. No. C was to the effect that unless the jury found that Kennedy failed to drive to the left of the center of the road and turned right before getting his car past the Winters car, thus causing the accident, the verdict should be for the defendants. No. F gave the three elements necessary to constitute actionable negligence, and the last part was substantially the same as No. C.

Instructions Nos. 11 and 12, given by the court, are substantially the same as requested instructions Nos. A, B, and D, and are more favorable to the defendants than they were entitled to. Instruction No. 5 correctly gave the three elements necessary to constitute actionable negligence, substantially as requested in No. F. In instructions Nos. 8, 10, 11, and 12, the court instructed the jury on the defendants' theory.

No error was committed by the court in refusing to give requested instructions Nos. A, B, and D, first, because they were covered by instructions Nos. 11 and 12 (Finch v. Brown, 27 Okla. 217, 111 P. 391; Colonna v. Eiseman Mfg. Co., 98 Okla. 107, 224 P. 181); and second, because they did not correctly state the law. They failed to tell the jury that, even if the accident did occur on the east side of the road, if the negligence of Kennedy caused Mrs. Winters to lose control of her car, or if the concurring negligence of Kennedy and Mrs. Winters was the proximate cause of the accident, the plaintiff could recover. The defendants did not plead contributory negligence, and there was no contention that Mrs. Wood was not the invited guest of Mrs. Winters. St. Louis & S. F. Ry. Co. v. Bell, 58 Okla. 84, 159 P. 336. It is not error to refuse to give requested instructions which cannot be given without correction or modification. Colonna v. Eiseman Mfg. Co., supra; Ed M. Seamans & Co. v. Overholser & Avey, 116 Okla. 276, 244 P. 796.

The court did not commit error by refusing to give requested instructions Nos. C and F. These instructions limited the plaintiff to only one act of negligence, namely, that Kennedy failed to drive to the left of the center of the road and cut in ahead of Mrs. Winters' car before being clear of it. They left out of consideration the other acts of negligence charged in the petition and supported by the evidence, namely, (a) that Kennedy failed to warn Mrs. Winters that he intended to pass; (b) that he drove his car too close to the Winters car as he passed; and (c) that he drove his car at an excessive rate of

speed as he passed. The testimony of the plaintiff and Mrs. Winters indicates that Kennedy, by the manner in which he passed her, frightened Mrs. Winters and caused her to turn sharply to the right in order to avoid being hit by the Kennedy car. Under the allegations of the petition and the evidence it was the duty of the court to submit to the jury all four acts of negligence charged by the plaintiff, and it was for the jury to say whether any of said acts of negligence, or two or more of them combined, proximately caused the accident. This the requested instructions failed to do. By instructions Nos. 7, 8, 9, 10, and 11, the court correctly submitted to the jury all four acts of negligence, and by instruction No. 13 the court limited the jury to the acts of negligence charged in the petition.

Judgment affirmed.

The Supreme Court acknowledges the aid of District Judge Thurman S. Hurst, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.